ON PETITION FOR REHEARING
RAWLS, Chief Judge.
Appellee Coastal Petroleum Company has filed a lengthy petition for rehearing which. *76 indicates that this court’s decision is not clear to the Appellee in several respects. It complains in particular that this court failed to give credence to the testimony of Appellee’s expert witness who testified that Lake Hancock is located within the limits of Drilling Block 5. For the sake of clarity the following is added.
Our holding recognized that if the Exploration Contract gave Appellee’s predecessor the option to lease Lake Hancock, and that option was properly exercised, then the Lake could not be excluded from the lease.[1] However, the Exploration contract did not give the lessee an option on all water bottoms owned by the State within the territories described but only those specified therein. These included “bottoms of and water bottoms adjacent to only such Rivers and Lakes as are specifically named” which included Peace River. It further provided, “the areas covered by this contract shall be * * * all rivers and lakes named herein, together with all connecting sloughs, arms and overflow lands located in such waters.” The verbiage chosen by the parties shows a clear intent that rivers and lakes are two separate entities, and that the adjacent water bottoms included in the contract are all connecting sloughs, arms and overflow land of Peace River. Should any doubt exist as to whether this construction is correct, it is alleviated by the more definite description appearing in the lease.
The stated purpose of Drilling Lease No. 224-B as Modified was to clarify former provisions which appeared difficult of construction, and it made clear that Lake Hancock was not included in the Drilling Lease by granting rights in the water bottom of Peace River only to Township 29/30.
This brings us to the testimony of Ap-pellee’s expert that Lake Hancock is within the limits of Drilling Block 5. If Lake Hancock is part of Peace River, as Appel-lee contends, it is in Drilling Block 7 under the explicit terms of the lease.
The northern and southern boundaries of each drilling block are described in the lease as a “projection westward from the shore of the township line” designated. The map attached to the lease designates the northern and southern boundaries of each block by a heavy line projecting westward from the mainland and passing only through coastal and intracoastal waters to a point 10.36 statute miles seaward from the outer-[1] most land, which is the western boundary. The lease further provides that all rivers are to be considered a part of the drilling block into which they empty. Peace River empties into Charlotte Harbor in Drilling Block 7. Therefore, all of Peace River which was conveyed, whether it be directly east of Drilling Blocks S or 6 or where ever located, is a part of Drilling Block 7.
The lease describes the western, northern, and southern boundaries as lines (the last 2 projecting westward from the shore), but it describes the eastern boundary thusly: “the eastern boundary shall include the areas as described in Exploration Contract.” That contract provides, “the areas covered by this contract shall be * * * Inland waters, [which] shall consist of all rivers and lakes named herein, together with all connecting sloughs, arms * * We conclude Drilling Block 7 has within its eastern boundary Peace River from its mouth to Township 29/30. A construction of the lease which allows the northern and southern boundaries of the Drilling Blocks to project not only westivard from the shore but also eastivard so as to allow not only that part of Peace River south of Township 29/30 but also that part north thereof to be included in the lease, would be tantamount to rewriting the explicit terms of the contract.
We adhere to our former opinion as clarified herein. The petition for rehearing is denied.
WIGGINTON and CARROLL, DONALD K., JJ., concur.

. See Collins v. Coastal Petroleum, 118 So.2d 796 (Fla.App.1st, 1960).